UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YINGLI ENERGY (CHINA) COMPANY LIMITED,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant. | Court No. 24-0131 |

## COMPLAINT

On behalf of Yingli Energy (China) Company Limited ("Yingli China"), a Chinese exporter of Crystalline Silicon Photovoltaic Cells, we hereby bring this civil action and allege the following:

### Parties

1.　Yingli Energy (China) Company Limited ("Yingli China") is a Chinese exporter of Crystalline Silicon Photovoltaic Cells ("Solar Cells") and was a mandatory respondent in the tenth solar cells antidumping administrative review for the period November 30, 2021 through October 31, 2022.

2.　Defendant is the United States of America acting by and through the U.S. Department of Commerce (the "Department").

### Jurisdiction

3.　This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (2)(B)(iii) to contest the Department's final results of the administrative review under 19 U.S.C. §1675.

1

*See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg. 55,562 (July 5, 2024) ("Final Results"), *incorporating* Issues and Decision Memorandum ("Final IDM"). Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

### Standing

4.     Yingli China is a foreign exporter of subject merchandise. The subject merchandise includes solar cells as well as modules, laminates, and panels consisting of solar cells. Yingli China participated as an individually examined mandatory respondent in the antidumping administrative review resulting in the contested Final Results. Accordingly, Yingli China is an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

5.     In addition, because the Department's Final Results overstated Yingli China's antidumping duty margin, Yingli China has been adversely affected and aggrieved by agency action within the meaning of 5 U.S.C. § 702. Therefore, Yingli China has standing to bring this action under 28 U.S.C. § 2631(c).

### Timeliness

6.     Notice of the Final Results was published in the Federal Register on July 5, 2024. Yingli China filed the summons instituting this action on July 30, 2024, *i.e.*, within 30 days of publication of the Final Results, serving notice of the action upon all other participants in the review on the same date. Accordingly, Yingli China is timely filing this complaint and has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 of the Rules of this Court.

**Facts**

1.     On February 2, 2023, the Department initiated the tenth administrative review of the antidumping duty order on Solar Cells from China. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 7,060 (February 2, 2023) (Initiation Notice).

2.     The Department selected Yingli and Shenzhen Sungold Solar Co., Ltd. ("Sungold"), the two companies participating in the review that accounted for the largest volume of entries, as mandatory respondents. *See* Dep't of Commerce, Memorandum re: *Respondent Selection* (September 8, 2023).

3.     Because this was a nonmarket economy order, the Department presumes that all companies within the NME country are subject to governmental control unless the company demonstrates the absence of both *de jure* and *de facto* government control over its export activities. The Department's well-established purpose for the separate rate analysis is to determine whether or not the company can demonstrate this absence of governmental control over its export activities.

4.     To establish the absence of government control over export activities, the Department has a set of factors that it analyzes for *de facto* control:

> (1) set their own export sales prices independent of the government and without the approval of a government authority; (2) have the authority to negotiate and sign contracts and other agreements; (3) maintain autonomy from the government in making decisions regarding the selection of management; and (4) retain the proceeds of their respective export sales and make independent decisions regarding the disposition of profits or financing of losses

Prelim. IDM at 13; and for analyzing de jure control:

> (1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) legislative enactments decentralizing control over the export activities of companies; and (3) other formal measures by the government decentralizing control over the export activities of companies.

*Id*. at 12.

5. With these factors, the Department has a separate rate application that requests information from exporters to establish *de facto* and *de jure* separateness from the government of China. After a company has demonstrated this separateness and been assigned a separate rate in a review or investigation, the company will file a separate rate certification in subsequent reviews that nothing has changed to impact this analysis. Yingli timely submitted this separate rate certification. Yingli SRC (March 6, 2023). Further, when Yingli was selected as a mandatory respondent it responded to the Section A portion of the questionnaire which also requests information to establish the lack of government control. Yingli Sec A (May 18, 2023).

6. Yingli China demonstrated with these timely, complete questionnaire responses that the government did not have control over its export activities.

7. Nonetheless, in its Preliminary Results, the Department found *de facto* government control for Yingli China and found Yingli was part of the PRC-entity. Yingli China's majority shareholders is ultimately controlled by a State-owned Assets Supervision and Administration Commission ("SASAC") company. Based on this fact alone, the Department found Yingli China is *de facto* controlled by the government.

8. In its case brief, Yingli China argued that this conclusion was speculative. The Department failed to properly analyze the *de facto* factors as to whether or not Yingli China did demonstrate the absence of actual governmental control over its export activities. Instead of confronting the record as a whole and Yingli China's export function, the Department only

4

considered its ultimate ownership.

9. In the Final Results, the Department did not change its position. The Department maintained that its practice is supported by the law to conclude that where a government entity holds a majority equity ownership, either directly or indirectly, in a respondent exporter, this interest, in and of itself, means that the government exercises control over the company's operations, generally.

10. This appeal ensued.

## COUNT I

1. Plaintiff hereby incorporates, by reference, paragraphs 1 through 10 above.

2. The Department's denial of Yingli's separate rate was unsupported by substantial evidence and is not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i) (the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . .."). The Department failed to analyze these factors, stopping merely at the ultimate ownership of Yingli China and speculating that SASAC would have the potential for *de facto* control. It is well established that speculation does not constitute substantial evidence." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (emphasis added). Not only was the Department's separate rate denial based on just such speculation, but the analysis only considered the mere possibility of control rather than actual control.

\*   \*   \*

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the defendant:

(1) Declaring that the Department's determination that Yingli China failed to rebut the presumption of government control and was assigned the PRC-entity rate is unsupported by substantial evidence and contrary to law; and

(2) Providing any additional relief as may be just in the circumstances.

                        Respectfully submitted,

                        /s/ Gregory S. Menegaz
                        Gregory S. Menegaz
                        Alexandra H. Salzman
                        **DEKIEFFER & HORGAN, PLLC**
                        1156 Fifteenth Street, N.W.  20005, Suite 1101
                        Tel: (202) 783-6900
                        email:  gmenegaz@dhlaw.com

Dated:  August 28, 2024