**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |
|---|---|
| YINGLI ENERGY (CHINA) COMPANY LIMITED, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Court No. 24-00131 |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING | ) ) ) |
| Defendant-Intervenor | ) ) |

**PLAINTIFF'S REPLY BRIEF**


Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang
THE INTER-GLOBAL TRADE LAW GROUP, PLLC
Suite 1101
1156 15th St., N.W.
Washington DC  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: June 3, 2025

TABLE OF CONTENTS

I.    Yingli's Rebuttal of the Presumption of Chinese Government Control .......................... 1

II.   The Issue of Whether Commerce's Practice of Denying Separate Rates Using a *Per Se* Rule of Government Control is a Legal Issue............................................................ 5

III.  Conclusion And Prayer For Relief.................................................................................. 8

# TABLE OF AUTHORITIES

**CASES**

*China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028 (Fed. Cir. 2021) ...................................7

*Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304 (Fed. Cir. 2017).......................7

*Guizhou Tyre Co. v. United States*, 639 F. Supp. 3d 1270(Ct. Int'l Trade 2023) ......................... 6-7

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). .........................................................7

*OCP S.A. v. United States*, No. 1:21-cv-00219, 2025 Ct. Intl. Trade LEXIS 32 (Ct. Int'l Trade Mar. 27, 2025). ......................................................................................................................6

*Pirelli Tyre Co., Ltd. v. United States*, 638 F.Supp.3d 1361 (Ct. Int'l Trade 2023) ........................3

*Pirelli Tyre Co., Ltd. v. United States,* 128 F.4th 1265 (Fed. Cir. 2025)...................................3, 7

*Sigma Corp. v. United States*, 117 F.3d 1401 (Fed. Cir. 1997) ...............................................3, 4, 7

*Zenith Elecs. Corp. v. United States*, 988 F.2d 1573 (Fed. Cir. 1993) ............................................4

*Zhejiang Mach. Imp. v. United States*, 65 F.4th 1364 (Fed. Cir. 2023)...........................................3

*Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*, 350 F. Supp. 3d 1308 (Ct. Int'l Trade 2018)...................................................................................................................5

**ADMINISTRATIVE DECISIONS**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Administrative Review, and Preliminary Determination of No Shipments; 2021–2022*, 89 Fed. Reg. 457 (Dep't Commerce January 4, 2024) .......................................................................................................................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg. 55,562 (Dep't Commerce July 5, 2024) ..................................................................... 4-5

Plaintiff Yingli Energy (China) Company Limited ("Yingli") hereby files its reply brief to Defendant United States' response brief. *See* Defendant's Response To Plaintiff's Rule 56.2 Motion For Judgment On The Agency Record (April 22, 2025), ECF Doc No. 36 ("U.S. Br."). *See also* Defendant-Intervenor American Alliance For Solar Manufacturing Response To Plaintiff's Motion For Judgment On The Agency Record (May 13, 2025), ECF Doc. No. 37.

## I.      Yingli's Rebuttal of the Presumption of Chinese Government Control

In its response brief, Defendant first argues that Yingli failed to rebut the presumption of Government control because a state-controlled entity holds a majority ownership in the company. U.S. Br. at 8-9. Further, "Commerce considered and weighed the available evidence on the record regarding Yingli's degree of independence in its export activities . …" *Id*. at 9. Yingli disagrees with Defendant's assessment that Commerce properly considered and weighed all of the available evidence. In fact, Commerce made a premature decision to discontinue the review of Yingli's export sales. Even before Commerce issued its preliminary results of the administrative review, Commerce ceased its review of Yingli China and released a memorandum in which Commerce selected an alternative mandatory respondent. Dep't Commerce, Memorandum re: *Respondent Selection* (September 8, 2023), **CR200**; **PR269** ("Add'l Respondent Memo"). Thus, Commerce failed to take advantage of the entire time allowed during the fact-finding phase of its administrative review to fully consider Yingli's evidence demonstrating that its export activities were independent from all Chinese Government control.

Neither Commerce nor Defendant has denied the fact that Yingli established its export activities specifically to be controlled by its importer, Yingli Green Energy Americas, Inc. ("YGEA"), which resold the merchandise to unaffiliated U.S. customers. Yingli. Section A Questionnaire Response (May 18, 2023) at 1-2 **(**"Yingli Sec. A Rsp."), **CR74-78; PR160-161**.

YGEA has full autonomy in dealing with U.S. customers for the sale of subject merchandise. As Yingli reported:

> After negotiation, YGEA and the customers arrive at a mutual agreement on the price and then the U.S. customers will sign sales contracts or place orders with YGEA. YGEA's manager has the ultimate authority to determine the selling prices and contractually bind YGEA to sell merchandise. There is no outside organization that reviews or approves any aspect of the sales transaction.

Yingli Sec. A Rsp. at 9.

Yingli China and YGEA operate under separate ownership. YGEA is 100% owned by, a foreign legal entity registered in the British Virgin Islands ("BVI Parent Company"). *Id*. at 16-17. Commerce did not question the independence of companies wholly owned by a foreign entity, as here. "{I}f Commerce determines that a company is wholly foreign-owned or located in a market economy (ME) country, then analysis of the *de jure* and *de facto* criteria are not necessary to determine whether the company is independent from government control and eligible for a separate dumping margin." *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Administrative Review, and Preliminary Determination of No Shipments; 2021–2022*, 89 Fed. Reg. 457 (January 4, 2024), **PR340**, and accompanying Preliminary Decision Memorandum at 10 ("Prelim. Decision Memo"), **PR339.**

Since Yingli conducts all of its export activities through YGEA, Yingli China demonstrated on the record of this case that it is *de facto* independent of Chinese Government control of these activities. *See* Yingli's Rule 56.2 Memorandum In Support Of Motion For

2

Judgment Upon The Agency Record, as corrected (January 16, 2025), ECF Doc. No. 30 at 11-14 ("Yingli Br."). Rather than argue the validity of Yingli's record documents, Defendant merely repeats Commerce's circular argument that the Chinese government's influence over Yingli's board of directors and board of supervisors would give the power to influence such areas as price setting and signing contracts. U.S. Br. at 13.

Further Defendant finds fault with Yingli's argument that the purpose of Commerce's four prong *de facto* analysis is to determine whether or not Yingli and YGEA are subject to *de facto* governmental control over their export activities. Yingli Br. at 13; U.S. Br. at 15-16. Defendant cites to the recent *Perelli Tyre* case for the proposition that Commerce is not required to establish a link between a company's selection of management and influence over export activities. *See Pirelli Tyre Co., Ltd. v. United States*, 638 F.Supp.3d 1361, 1377 (Ct. Int'l Trade 2023) ("the Court observes that neither the second nor third factors mention export activities or export functions."), *aff'd*, 128 F.4th 1265, 1270 (Fed. Cir. 2025). The Court's decision in *Perelli Tyre* and other recent court decisions, however, belie the precedent that they all rely on, namely *Sigma Corp. v. United States*, 117 F.3d 1401 (Fed. Cir. 1997). *See Perelli Tyre*, 128 F.4th at 1267, 1267. *See also, e.g., Zhejiang Mach. Imp. v. United States*, 65 F.4th 1364, 1366 (Fed. Cir. 2023) ("Investigated goods from a non-market economy country are subject to a single country-wide antidumping duty rate." Citing to *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997)). ("An individual producer from that country can seek to receive an individual rate (as opposed to the country-wide rate) if it demonstrates that the NME country's government lacks both *de jure* and *de facto* control over its activities." *Id.* at 1405).

Defendant, also, relies to a great extent on the Federal Circuit's decision in *Sigma Corp*. *See* U.S. Br. at 7, 11, 12, 19, 20, 21, 22, 23. The Federal Circuit made its decision in *Sigma*

3

*Corp*, however, under the explicit condition that a finding of *de facto* government control pertained to the respondent's export activities. The *Sigma* Court wrote:

> Consistent with Commerce's approach to this issue, the Court of International Trade has ruled that an exporter in a nonmarket economy country must "affirmatively demonstrate" its entitlement to a separate, company-specific margin by showing "an absence of central government control, both in law and in fact, **with respect to exports**." *Tianjin Mach. Import & Export Corp. v. United States*, 16 C.I.T. 931, 806 F. Supp. 1008, 1013-14 (Ct. Int'l Trade 1992). Absence of *de jure* government control can be demonstrated by reference to legislation and other governmental measures that decentralize control. *Id*. 806 F. Supp. 1008 at 1014. Absence of *de facto* government control can be established by evidence that each exporter sets its prices independently of the government and of other exporters, and that each exporter keeps the proceeds of its sales. *Id*.

*Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). {Emphasis added.} Under these conditions, the *Sigma* Court found it reasonable that the exporter should carry the burden of proving that it set its prices independently of the government and kept the proceeds of its sales, which Yingli did in this instant case. ("{B}ecause exporters have the best access to information pertinent to the "state control" issue, Commerce is justified in placing on them the burden of showing a lack of state control. *See Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information.")). *Sigma Corp.*, 117 F.3d at 1406 (Fed. Cir. 1997).

Further, the *Sigma* Court assumed that a respondent exporter would actually have the possibility to rebut the presumption of Government control over export activities. *Id*. In Yingli's case, however, Commerce made perfectly clear that a respondents' chances of rebutting majority Government ownership and achieving a separate rate is practically nonexistent. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg.

4

55,562 (Dep't Commerce July 5, 2024) ("Final Results"), **PR389,** *incorporating* Issues and Decision Memorandum at 13-14 ("Final IDM") **PR383.**  *See also* Yingli Br. at 15-16. Nevertheless, Defendant remarks somewhat facetiously that "majority-ownership does not make the presumption an irrebuttable one."  Neither Commerce nor Defendant discuss the record evidence that Yingli proffered to demonstrate lack of control of its export activities.  The circular argument from Commerce, repeated by Defendant, regarding the Government's shareholdings in Yingli without acknowledging Yingli's evidence that Yingli's shareholders do not govern Yingli's export activities is not "consideration" of the context or "weighing" of the evidence.

II.   **The Issue of Whether Commerce's Practice of Denying Separate Rates Using a *Per Se* Rule of Government Control is a Legal Issue.**

Defendant's argument that Yingli did not exhaust its administrative remedies regarding Commerce's NME presumption is without merit.  U.S. Br. at 17-18.  Yingli's argument is that there is no basis in law for a *per se* presumption for Chinese Government control of its export activities that leaves no room for rebuttal.  This is an argument of a purely legal nature, not a question of "weighing" the evidence.  *Id*. at 19.  There is no evidence to weigh when a series of Court decisions have held that Commerce's finding of Government control cannot be rebutted. Yingli Br. at 16-17, citing to *Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*, 350 F. Supp. 3d 1308 (Ct. Int'l Trade 2018).

Like the question of whether Commerce can apply a *per se* presumption, the issue of the legal basis for Commerce's NME policy is also a purely legal issue.  *See* Yingli Br. at 17-19.  In its response brief, Defendant attempts to distinguish Commerce's NME policy as currently practiced from non-legislative polices and statutory interpretations.  Defendant labels the NME policy an "evidentiary practice" without defining this term.  Nevertheless, an agency's

5

"practices" must also conform to statutory mandates. For instance in a recent case concerning the confidentiality of questionnaire responses submitted to the International Trade Commission, this Court held that

> The Commission has a practice of automatically treating all information in questionnaire responses as confidential. That practice is inconsistent with statute, regulation, precedent, and common sense. In defending its practice, the Commission claims it is the sole arbiter of what is and is not confidential and that its determination binds even the federal courts that review its determinations. . . . That is not the law, and the Commission is not a law unto itself.

*OCP S.A. v. United States*, No. 1:21-cv-00219, 2025 Ct. Intl. Trade LEXIS 32, at *3 (Ct. Int'l Trade Mar. 27, 2025). Likewise, in Yingli's case, Commerce's NME practice cannot trump the law.

Defendant, in an attempt to shroud Commerce's current *per se* NME practice in a legal cloak, maintains that somehow the practice results in more accurate dumping margins from NME countries. U.S. Br. at 21. Defendant, however, does not explain how a *per se* evidentiary rule can possibly be more accurate than an individual review of a companies' production and sales and actual calculation of a dumping margin. In *Guizhou Tyre,* the Court of International Trade grappled with this question and came to the questionable conclusion that:

> {t}he necessary implication of the principle applied by the Court of Appeals is that an individual respondent such as GTC, even if a mandatory respondent, is not itself a "known exporter or producer" within the meaning of 19 U.S.C. § 1677f-1(c) unless it rebuts the presumption of government control. Under the holdings in *CMA* and *Diamond Sawblades*, that is so even though the respondent is a "reviewed" exporter or producer for purposes of an administrative review of an antidumping duty order conducted under 19 U.S.C. § 1675(a) and 19 C.F.R. § 351.213(b)(2) (". . . an exporter or producer covered by an [antidumping duty] order . . . may request in writing that the Secretary [of Commerce] conduct an administrative review of only that person."). Thus, under the Department's methodology, the PRC-wide entity, and not GTC, is the actual "known exporter or producer," within the meaning of that term as used in 19 U.S.C. § 1677f-1(c), of the merchandise GTC exported to the United States during the POR.

6

*Guizhou Tyre Co. v. United States*, 639 F. Supp. 3d 1270, 1284 (Ct. Int'l Trade 2023), citing to *China Mfrs. All., LLC v. United States*, 1 F.4th 1028 (Fed. Cir. 2021) and *Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304 (Fed. Cir. 2017).  See also U.S. Br. at 24.

In the above quote, it seems as if the Court in *Guizhou Tyre* is well aware of the absurdity of the conclusion that the "actual known exporter or producer" is not actually the "actual known exporter or producer."  Similarly, Defendant's position that "'the statutory directive' to calculate an individual weighted average dumping margin for Yingli as a mandatory respondent fails under *stare decisis*" is untenable and must either be false or else point to a problem with the noted *stare decisis*.  *Id*.

Finally, Defendant's argument that Loper does not apply to the Court's consideration of Commerce's NME practice is wrong.  U.S. Br. at 22, citing to Yingli Br. at 20 and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  Defendant again distinguishes "evidentiary practice" from statutory interpretation, and maintains that *Loper* does not apply to the former. In addition in *Perelli Tyre*, 128 F.4th 1265 (Fed. Cir. 2025), the Federal Circuit refused to question Commerce's practice, relying on *Sigma*.  U.S. Br. at 22-23.  As stated above, however, Commerce's NME practice as applied to Yingli is far different than the NME application in *Sigma*.  The *Sigma* Court decision was based on a Commerce decision that exclusively considered Government control over *export activities* and a presumption that could actually be rebutted.  Further, Defendant cannot avoid arguing in this section of its brief that Commerce has the "discretion" to apply the antidumping law.  U.S. Br. at 21-23.  Thus, Commerce's discretionary application of the NME policy is open to Court scrutiny under *Loper*.

Yingli China submits that no legitimate reason exists for Commerce's assignment of the adverse PRC-entity rate of 238.95 percent *ad valorem* rather than the statutory mandated

7

individually calculated rate, and this Court should reverse Commerce's application of its NME Presumption in Yingli China's case.

### III.    Conclusion And Prayer For Relief

In light of the foregoing, Commerce's *Final Results* were not supported by substantial evidence or in accordance with the law. Yingli China requests that the Court remand this case for redetermination and calculation of Yingli China's individual and separate rate based on the company's submissions during the underlying administrative review because (1) Yingli China's export activities were not dictated by the GOC and (2) no legal basis exists for Commerce's application of an NME Presumption as to Yingli China.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang[**]
THE INTER-GLOBAL TRADE LAW GROUP, PLLC
Suite 1101
1156 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Date: June 3, 2025

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **2,550** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
THE INTER-GLOBAL TRADE LAW GROUP, PLLC
Suite 1101
1156 Fifteenth St., N.W.
Washington DC  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*